SUCCESSION OF H. VALANSART—Opposition of P..J. PAVY.

On the removal to this State of French subjects, who were married and resided long after their
  marriage in France, a tacit mortgage in favor of the wife for preëxisting claims against her hus-
  band, originating during their residence in France, does not attach to the immovables acquired by
  her husband after his arrival here.

APPEAL from the District Court of St. Landry, *Martel, J.*
  *J. G. Olivier* and *E. H. Martin*, for appellant. *Swayze & Moore*, for ap-
pellee.

SPOFFORD, J. *Lucile Lemoine*, widow of *Henri Valansart*, and one of the
appellees in this case, has moved to dismiss the appeal.

Her motion came too late. The day before it was made, she had filed an
answer to the merits praying an amendment of the judgment in her favor.
This was a waiver of all informalities in bringing up the appeal. *Shall v.
Banks*, 8 Rob. 170; *Dunbar v. Owens*, 10 Rob. 140; *Carmichael v. Armor*, 1
Rob. 197; *Gayoso v. Garcia*, 1 N. S. 327; *Duncan's Executors v. Poydras'
Executors*, 4 N. S. 360; *Burkham v. Livingston*, 11 An. 604.

It is true, this court will notice *ex officio* the absence of essential parties
which would render it impossible to interfere with the judgment appealed
from without affecting prejudicially the rights of such parties. But in this
case, we observe that the only controversy is, whether the claim of *Lucile
Lemoine*, widow of *Henri Valansart*, for the sum of fifty-two thousand nine
hundred (52,900) francs, with a legal or tacit mortgage on all the property of
said *Valansart*, deceased, in preference to all other persons, with five per cent.
interest from the month of October, 1853, shall be displaced by the acknow-
ledged mortgage claims of *P. J. Pavy*, for some $27,566, besides interest,
which have been placed upon the tableau and allowed by the judgment as
next in rank to the widow's claim. The opposition to the small claim of
*Urbain* is abandoned; and *Louis Chaudet*, the administrator of the succes-
sion, whose tableau is opposed by *Pavy*, is a party before us. We can, there-
fore, settle the controversy between the widow of *Valansart* and the oppo-
nent of *Pavy*, without disturbing, in any degree, the rights of other parties.

*Henri Valansart* and *Lucile Lemoine* were married in France, their domicil
of origin, in 1835. Just before the marriage was solemnized, they entered
into a marriage contract, by which it appears that the wife brought to her
husband a dowry of thirty-five thousand francs. Both spouses continued to
live in France, where *Valansart* appears to have been extensively engaged in
business as a miller and flour merchant, until the year 1848, when he came to
this country. In February, 1849, he entered into a planting partnership with
the appellant, *P. J. Pavy*. *Valansart* contributed $6,900 to the enterprise,
and the titles to the lands were taken in his name. The act of partnership
being *sous-seing privé*, *Pavy* contributed an equal amount. The plantation
was situated in the parish of St. Landry. The partnership became largely
indebted to their commission merchants, *P. J. Pavy & Co.* and *Pavy, Lobit &
Co.*; the balance due in May, 1852, being $60,352 34. Half of this debt was

due by each partner, to wit, $30,176 17. At the same time *Pavy, Lobit & Co.* owed *Valansart*, on his individual account with them, $5,823 17. Deducting that from his half of the partnership debt, left him indebted to *Pavy, Lobit & Co.* in the sum of $24,353 10.

It seems that *Pavy* paid this sum for *Valansart*, and thereby became his creditor for the amount. He also paid for him a further sum of $3,213, all of which was acknowledged, in writing, by *Valansart*, who gave his notes to *Pavy*, dated in June, 1852, one for $12,000, and the other for the sum of $12,353, and a third note, dated in January, 1853, for $3,213 ; all bearing interest from specified dates. On the 14th of March, 1853, *Valansart* and *Pavy* executed a recognitive act in authentic form, acknowledging each other's title to an undivided half of the property belonging to the "Valansart plantation ;" in this act the indebtedness of *Valansart* to *Pavy* for the three above described notes, was acknowledged, and to secure the same, the former specially mortgaged to the latter his undivided half of the plantation and its dependencies, together with the thirty-five slaves thereon. The notes were paraphed and identified with the notarial act aforesaid, which was duly recorded in the alienation and mortgage books of the Recorder's office for the parish of St. Landry, on the 24th March, 1853.

Late in 1849, *Mrs. Valansart*, left her home in France, and came to the United States. She joined her husband at the plantation in St. Landry, in the latter part of 1850, or the early part of 1851. Both spouses continued to reside here until the death of *Henri Valansart*, in October, 1853.

Upon the opening of his succession, *Mrs. Valansart* advanced her claim for $55,900 francs, with a tacit mortgage upon all the property of her husband. No evidence of this indebtedness ever existed upon the public records of this State previously.

The only controversy to be settled is, whether she has this tacit mortgage overriding the acknowledged conventional mortgage of *P. J. Pavy.*

The view we take of the case renders it unnecessary to discuss the questions which have been mooted by counsel concerning subrogation and novation.

For we find that of the sum claimed by *Mrs. Valansart* (widow), thirty-five thousand francs are claimed for the restitution of her dowry. This is proven to have been paid into the hands of her husband in France, within a few weeks after their marriage. Ten thousand five hundred francs are claimed for money loaned to *Henri Valansart* in France, by her father, to whose succession she has accounted for it since the death of her husband here ; and ten thousand four hundred francs are claimed as having been paid by her father and mother in France for *Valansart* upon certain contracts made by him there, before he departed for the United States, and for which she has accounted in the same manner.

She also avers that on the 8th January, 1852, she obtained a judgment against her husband for all these sums, at Paris, in France.

One of her witnesses testifies, that all the sums received by *Valansart* for the dowry of his wife, and in the way of loans from his father-in-law, were employed in his business as a flour merchant in France.

The case, therefore, resolves itself into the inquiry, whether, on the removal to this State of French subjects who were married and resided long after their marriage in France, a tacit mortgage in favor of the wife for preëxisting

Succession of
Valansart.

claims against her husband, originating during their residence in France, attaches to the immovables acquired by her husband after his arrival here.

The question has twice been brought before this tribunal and twice answered in the negative. We, therefore, consider the jurisprudence of Louisiana upon this point as settled.

In *Prats* v. *His Creditors*, 2 Rob. 508, our predecessors declared, that "after an attentive examination of the provisions of our Code, which establish mortgages in favor of minors and married women, we have come to the conclusion that such mortgages, at least so far as they are tacit and exist without being recorded, were intended to be confined to persons who marry in this State, or receive their appointments as tutors from our courts, or who, after marrying or receiving such appointments abroad, come to reside here; *and that, in the latter case, such tacit mortgages exist only for sums received since their removal into this State.*"

In *Stewart* v. *His Creditors*, decided at New Orleans in February last, the case of *Prats* v. *His Creditors* was affirmed. On that occasion we remarked, that "from a review of the various Articles of the Code on the subject of legal mortgages, it appears to us that they point conclusively not only to the supposed residence in the State of the party whose property is sought to be subjected to their operation, *but to the security of a debt originating in the State.*"

Both of the cases above cited were analogous to this, in that the law of the country where the wife's claim originated, was similar to our own, with respect to the tacit mortgage reserved to her for the restitution of her dotal affects, and the reimbursement of her paraphernal property alienated by her husband.

It is true, these laws are to be classed among real statutes, and as such they have no extra-territorial operation. The law of France can confer no mortgage or privilege upon property situate in Louisiana. The fact that the appellee has a mortgage for restitution on the property of her husband there, in no wise betters her condition here. To our own law alone, must she look for a mortgage claim upon property here; and if our Code, by its provisions, gives her such a mortgage as she claims, then it must give a similar retroactive relief to all wives who may immigrate to Louisiana, with dotal or paraphernal claims against their husbands originating abroad, whether the law of the domicil where the debts were contracted, secured them by a mortgage upon the property of the husband or not.

We cannot give such a sweeping extension to the doctrine of latent mortgages, to the detriment of our own citizens.

It is, therefore, ordered and decreed, that the judgment of the District Court, so far as it overrules the opposition of *P. J. Pavy*, to the allowance of the claim of *Lucile Lamoine*, widow of *Henri Valansart*, against the succession of her said husband, as a claim with a legal or tacit mortgage on all the property of the said deceased, in preference to all other persons, be avoided and reversed. It is further ordered, adjudged and decreed, that the said claim of *Lucile Lemoine*, for the sum of (52,900) fifty-two thousand nine hundred francs, be reduced to the rank of an ordinary claim against the succession of her said husband, and that no mortgage or privilege be allowed therefor, and that the tableau of distribution be reformed in this respect. It is further

ordered, that the judgment, in other respects, be affirmed; the costs of the <span style="float:right">SUCCESSION OF VALANSART.</span> opposition of *P. J. Pavy*, in both courts, to be paid by the succession.

---

### ON A RE-HEARING.

SPOFFORD, J. The point made in the application for a re-hearing, although not presented in the original argument, was not overlooked by the court.

But we thought, and still think, that the moneys paid by *Mrs. Valansart's* father for the debts of *Henri Valansart* in France, after he came to Louisiana, did not constitute valid claims in her favor against her husband, if at all, at any rate, until she had collated for them to her father's succession, and thus assumed the payment of them out of her own funds. But this settlement did not take place until after the rights of the opponent, *Pavy*, as a mortgage creditor of *Henri Valansart* were irrevocably fixed.

Re-hearing refused.